UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------- X

**ESTER LELCHOOK**, individually and as personal
representative of the Estate of David Martin Lelchook;
Kibbutz Saar
Western Galilee, Israel 22805

**MICHAL LELCHOOK**
Kibbutz Saar
Western Galilee, Israel 22805

**YAEL LELCHOOK**
Kibbutz Saar
Western Galilee, Israel 22805

**ALEXANDER LELCHOOK**
13 Notre Dame Road
Acton, MA 01720

    and

**DORIS LELCHOOK**
183 Oak Street
Newton Upper Falls, MA 02464

                    Plaintiffs,

           -against-

**THE CENTRAL BANK OF**
**THE ISLAMIC REPUBLIC OF IRAN**
(a/k/a Bank Markazi Jomhouri Islami Iran)
Mirdamad Blvd., No.144
Teheran, Islamic Republic of Iran;

**BANK SADERAT IRAN**
Bank Saderat Tower
43 Somayeh Avenue,
Teheran, Islamic Republic of Iran;

**BANK SADERAT, PLC**
5 Lothbury
London EC2R 7HD
United Kingdom;

Civ. No.

**THE ISLAMIC REPUBLIC OF IRAN**
Ministry of Foreign Affairs
Khomeini Ave. United Nations St.
Teheran, Iran;

**CBI DOES 1-10**
c/o The Central Bank of the Islamic Republic of Iran
(a/k/a Bank Markazi Jomhouri Islami Iran)
Mirdamad Blvd., No.144
Teheran, Islamic Republic of Iran;

**BSI DOES 1-10**
c/o Bank Saderat Iran
Bank Saderat Tower
43 Somayeh Avenue,
Teheran, Islamic Republic of Iran;

**BSPLC DOES 1-10**
c/o Bank Saderat PLC
5 Lothbury
London EC2R 7HD
United Kingdom,

    and

**IRANIAN DOES 1-10**
c/o The Islamic Republic of Iran Ministry of Foreign Affairs
Khomeini Ave. United Nations St.
Teheran, Iran,

Defendants.

------------------------------------------------------------------------- X

## COMPLAINT

    Plaintiffs, by their counsel, complain of the Defendants, and hereby allege for their Complaint as follows:

## INTRODUCTION

    1.    This is a civil action brought pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq*., the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a) and

supplemental causes of action, arising from the terrorist murder of American citizen David Martin Lelchook on August 2, 2006. On that date, David Martin Lelchook was riding his bicycle at Kibbutz Saar in Israel, when he was struck by a rocket fired by the Hezbollah terrorist organization (hereinafter: the "Rocket Attack"). The Rocket Attack was one of thousands of rocket and missile attacks against civilians in Israel carried out by Hezbollah between July 12 and August 14, 2006 (hereinafter: the "Hezbollah Rocket Barrage").

2.      The plaintiffs in this action are the estate, widow, daughters, brother and mother of David Martin Lelchook.

3.      The defendants provided extensive material support and resources to Hezbollah, that caused, enabled and facilitated the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

## THE PARTIES

4.      Plaintiff Ester Lelchook, at all times relevant hereto, is and was the widow and sole heir of United States citizen David Martin Lelchook, and the personal representative of the Estate of David Martin Lelchook. Plaintiff Ester Lelchook brings this action individually and on behalf of the Estate of David Martin Lelchook.

5.      Plaintiff Michal Lelchook, at all times relevant hereto, is and was a United States citizen and the daughter of David Martin Lelchook.

6.      Plaintiff Yael Lelchook, at all times relevant hereto, is and was a United States citizen and the daughter of David Martin Lelchook.

7.      Plaintiff Alexander Lelchook, at all times relevant hereto, is and was a United States citizen and the brother of David Martin Lelchook.

3

8.      Plaintiff Doris Lelchook, at all times relevant hereto, is and was a United States citizen and the mother of David Martin Lelchook.

9.      Defendant The Islamic Republic of Iran ("Iran"), through its political subdivisions, agencies, instrumentalities, officials, employees and agents, including the other defendants herein, provided Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

10.     Defendant Iran is a foreign state within the meaning of 28 U.S.C. § 1603, and has been continuously designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)) since 1984.

11.     Defendant The Central Bank of the Islamic Republic of Iran (a/k/a Bank Markazi Jomhouri Islami Iran) ("CBI") is a political subdivision of defendant Iran. As its name suggests CBI is Iran's central bank. The CBI's capital is wholly owned by defendant Iran. The CBI holds the funds belonging to Iran's ministries and government agencies, as well as Iran's foreign currency and gold reserves. Defendant CBI, acting within the scope of its office and agency, along with the other defendants herein, provided Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

12.     Defendant Bank Saderat Iran ("BSI") is a bank incorporated in Iran. Defendant Iran owns over 90% of the shares of defendant BSI, and BSI is therefore an agency and instrumentality of defendant Iran. Defendant BSI, acting within the scope of its office and agency, along with the other defendants herein, provided Hezbollah with material support and

resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

13.     Defendant Bank Saderat PLC ("BSPLC") is a bank incorporated in the United Kingdom that is wholly-owned by defendant BSI. Defendant BSPLC, along with the other defendants herein, provided Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

14.     Defendants CBI Does 1-10 are, and at all times relevant hereto were, officials, employees and agents of defendant CBI who, within the scope of their office, employment and agency, along with the other defendants herein, provided defendant Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

15.     Defendants BSI Does 1-10 are, and at all times relevant hereto were, officials, employees and agents of defendant BSI who, within the scope of their office, employment and agency, along with the other defendants herein, provided defendant Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

16.     Defendants BSPLC Does 1-10 are, and at all times relevant hereto were, officials, employees and agents of defendant BSPLC who, within the scope of their office, employment and agency, along with the other defendants herein, provided defendant Hezbollah with material

support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

17.     Defendants Iranian Does 1-10 are, and at all times relevant hereto were, officials, employees and agents of defendant Iran who, within the scope of their office, employment and agency, provided defendant Hezbollah with material support and resources, within the meaning of 28 U.S.C. § 1605A(a)(1), that enabled, facilitated and thereby caused the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

## JURISDICTION

18.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330(a), 1331, 1367 and 1605A(a) and pursuant to 18 U.S.C § 2333(a).

## STATEMENT OF FACTS

### A.     The Islamic Republic of Iran

19.     Since 1979 and until the present time, defendant Iran has continuously been governed by a militant Islamic regime which believes that Islam should be the sole world religion, that all non-Islamic nations and peoples should become Islamic and be destroyed if they refuse to do so, and that the Islamic nations, led by Iran, should rule the world exclusively.

20.     Since 1979 and until the present time Iran has been and remains, as a matter of official policy, extremely hostile to the United States (which Iran terms "the Great Satan") and to the State of Israel (which Iran terms "the Little Satan").

21.     Since 1979 and until the present time it has been the continuous and official policy and goal of Iran:

    a.  To weaken, harm and undermine the United States militarily, economically and politically;

    b.  To bring about and cause the eradication of the State of Israel and its replacement with an Islamic state; and

    c.  To bring about and cause the murder and/or expulsion of the Jewish residents of the State of Israel.

22.    The policy and goals described in the previous paragraph are referred to collectively hereinafter as "Iran's Policy and Goals."

23.    Iran is a highly ideological and authoritarian state that does not tolerate dissent and all political subdivisions of the Iranian government, all agencies and instrumentalities of Iran and all corporations controlled or directly or indirectly owned by Iran therefore support, and seek to advance the policies and goals of Iran, including Iran's Policy and Goals. Accordingly, CBI (which is a political subdivision of Iran) BSI (which is an agency and instrumentality of Iran and is controlled and directly owned by Iran) and BSPLC (which is controlled and indirectly owned by Iran) support and seek to advance Iran's Policy and Goals.

24.    Since 1979 and until the present time, it has been the continuous and official policy of Iran to use terrorism to achieve Iran's Policy and Goals. Specifically, since 1979 and until the present time, it has been the continuous and official policy of Iran to use terrorism (a) to intimidate and influence the United States government and public and thereby to weaken, harm and undermine the United States militarily, economically and politically and (b) to intimidate and influence the Israeli government and public and thereby to bring about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

25.     In order to carry out and achieve Iran's Policy and Goals using terrorism, Iran established the Hezbollah terrorist organization in 1982. Since 1982 and until the present day, Hezbollah has been controlled, funded and operated by Iran. Since 1982 and until the present day, Iran has used Hezbollah to carry out thousands of terrorist attacks against American and Israeli targets, in which hundreds of innocent victims have been murdered and thousands more maimed.

26.     In 1982 Iran and Hezbollah entered into an agreement, that remains in force until today, pursuant to which Hezbollah undertook to carry out acts of terrorism against American and Israeli targets, and in return Iran undertook to provide Hezbollah with financial and other material support to carry out such terrorist attacks ("Hezbollah Agreement"). The purpose of the Hezbollah Agreement was and is to achieve Iran's Policy and Goals.

27.     The terrorist attacks committed by Hezbollah between 1982 and July 12, 2006, using material support and resources provided by Iran, included, *inter alia*, the following:

a.  The July 19, 1982, kidnapping of American University president David S. Dodge in Beirut.

b.  The April 18, 1983, car bomb attack on the United States Embassy in Beirut in which 63 people were killed.

c.  The October 23, 1983, truck bomb attack on the U.S. Marine barracks in Beirut in which 241 American military personnel were killed.

d.  The September 20, 1984, car bomb attack on the U.S. Embassy annex in Beirut in which two Americans and 22 others were killed.

e.  The March 16, 1984, kidnapping and murder of William Buckley, a CIA operative working at the U.S. Embassy in Beirut.

f.  The April 12, 1984, attack on a restaurant near the U.S. Air Force Base in Torrejon, Spain in which eighteen U.S. servicemen were killed and 83 people injured.

g.  The December 4, 1984, terrorist hijacking of a Kuwait Airlines plane in which four passengers were murdered, including two Americans.

h.  The June 14, 1985, hijacking of TWA Flight 847 in which Robert Stethem, a U.S. Navy diver, was murdered. Other American passengers were held hostage before being released on June 30, 1985.

i.  The February 17, 1988, kidnapping and subsequent murder of U.S. Marine Col. William Higgins.

j.  The March 17, 1992, bombing of the Israeli Embassy in Buenos Aires that killed 29 people and injured over 200.

k.  The July 18, 1994, bombing of the Jewish community center in Buenos Aires that killed 86 people and injured over 200.

l.  The November 28, 1995, bombardment of towns in northern Israel with missiles aimed at Jewish civilians.

m.  The March 30, 1996, bombardment of northern Israeli towns with 28 missiles. A week later, Hezbollah fired 16 additional missiles, injuring 36 Israelis.

n.  The August 19, 1997, bombardment of northern Israel with dozens of missiles aimed at Jewish civilians.

o.  The December 28, 1998, bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

p. The May 17, 1999 bombardment on northern Israel with dozens of missiles aimed at Jewish civilians.

q. The June 24, 1999, bombardment on northern Israel, killing 2 people.

r. The April 9, 2002, launching of missiles into northern Israeli towns.

s. The August 10, 2003, firing of shells that killed a 16-year-old Israeli boy and wounded other Israelis.

28. The courts of the United States have issued many decisions finding Iran civilly liable for terrorist attacks carried out by Hezbollah in which U.S. citizens were murdered or harmed. This Court has found that "Hezbollah is an Iranian proxy organization, controlled, funded and operated by Iran … Iran's control over Hezbollah is so far-reaching that [the federal courts have] repeatedly held Iran vicariously liable, under the doctrine of respondeat superior, for actions of Hezbollah." *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286, 292 (D.D.C. 2003).

29. Hezbollah has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**B.**   **The Defendants' Provision of Funding to Hezbollah Between 2001 and 2006**

30. Hezbollah requires financial support: (a) in order to build and maintain its operational infrastructure for the planning and execution of terrorist attacks; (b) in order to purchase and store weapons, explosives and other materiel used by it to carry out terrorist attacks; (c) in order to pay, train, transport and shelter its terrorist operatives; and (d) in order to carry out specific terrorist attacks.

31.     Between 2001 and 2006, the defendants herein provided Hezbollah with over $50 million in financial support (hereinafter: "Defendants' Transfer of Funds to Hezbollah") with the specific intent and purpose of facilitating, enabling and causing Hezbollah to carry out terrorist attacks against American and Israeli targets in order to advance Iran's Policy and Goals. Defendants' Transfer of Funds to Hezbollah was carried out by defendants with the specific intent and purpose of (a) intimidating and influencing the United States government and public and thereby weakening, harming and undermining the United States militarily, economically and politically and (b) intimidating and influencing the Israeli government and public and thereby bringing about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

32.     Defendants' Transfer of Funds to Hezbollah was carried out by defendants in the following manner: defendant CBI transferred funds belonging defendant Iran to defendant BSI; defendant BSI then transferred these funds to defendant BSPLC in London; defendant BSPLC then transferred these funds to accounts controlled by Hezbollah in branches of defendant BSI in Beirut, from which Hezbollah then withdrew these funds.

33.     Defendants' Transfer of Funds to Hezbollah has been confirmed by the United States government. *See* Exhibit A (published at www.ustreas.gov/press/releases/hp644.htm).

34.     But for Defendants' Transfer of Funds to Hezbollah, Hezbollah's ability (a) to build and maintain its operational infrastructure for the planning and execution of terrorist attacks; (b) to purchase and store weapons, explosives and other materiel used by it to carry out terrorist attacks; (c) to pay, train, transport and shelter its terrorist operatives; and (d) to carry out specific terrorist attacks, including the Hezbollah Rocket Barrage and the Rocket Attack that

killed David Martin Lelchook and harmed the plaintiffs herein, would have been severely crippled and limited.

35.     Defendants' Transfer of Funds to Hezbollah substantially increased Hezbollah's ability to plan and carry out terrorist attacks, and facilitated and caused the execution of terrorist attacks by Hezbollah, including the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein.

36.     The defendants gave substantial aid, assistance and encouragement to one another and to Hezbollah and provided massive financial support to Hezbollah, and thereby aided and abetted Hezbollah, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism by Hezbollah, including the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein. The defendants did so with actual knowledge that Hezbollah had killed and injured numerous U.S. and other civilians in terrorist attacks and with the knowledge and specific intent that additional U.S. and other innocent civilians would be killed and/or injured as a result of their aiding, abetting and provision of material support and resources to the Hezbollah.

37.     The defendants knowingly and willingly conspired, agreed and acted in concert with one another and with Hezbollah, in order to advance Iran's Policy and Goals and pursuant to the Hezbollah Agreement, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein. The defendants did so with actual knowledge that Hezbollah had killed and injured numerous U.S. and other civilians in terrorist attacks and with the knowledge and specific intent that additional U.S. and other innocent civilians would be killed and/or injured as a result of their conspiracy with Hezbollah.

38.     At all relevant times, CBI was a political subdivision of Iran, and performed acts on behalf and at the direction of Iran, in order to advance Iran's Policy and Goals, pursuant to the Hezbollah Agreement and within the scope of its agency and office (within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c)), that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein, in that CBI implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hezbollah for the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

39.     Iran ordered, directed, authorized, ratified and approved the acts of CBI. Accordingly, Iran is vicariously liable for the acts of CBI.

40.     At all relevant times, CBI Does 1-10 were agents, officers and employees of CBI and Iran and performed acts on behalf and at the direction of defendants CBI and Iran, in order to advance Iran's Policy and Goals, pursuant to the Hezbollah Agreement and within the scope of their agency and office (within the meaning of 28 U.S.C. §§ 1605A(a)(1) and § 1605A(c)), that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein, in that CBI Does 1-10 authorized, planned and caused the provision of funds by CBI and Iran to Hezbollah for the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

41.     CBI and Iran ordered, directed, authorized, ratified and approved the acts of CBI Does 1-10. Accordingly, CBI and Iran are vicariously liable for the acts of CBI Does 1-10.

42.     At all relevant times, BSI was an agency and instrumentality of Iran, and performed acts on behalf and at the direction of Iran, in order to advance Iran's Policy and Goals,

pursuant to the Hezbollah Agreement and within the scope of its agency and office, (within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c)), that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein, in that BSI implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hezbollah for the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

43.     Iran ordered, directed, authorized, ratified and approved the acts of BSI. Accordingly, defendant Iran is vicariously liable for the acts of BSI.

44.     At all relevant times, BSI Does 1-10 were agents, officers and employees of BSI and Iran and performed acts on behalf and at the direction of BSI and Iran, in order to advance Iran's Policy and Goals, pursuant to the Hezbollah Agreement and within the scope of their agency and office (within the meaning of 28 U.S.C. §§ 1605A(a)(1) and 1605A(c)), that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein, in that BSI Does 1-10 authorized, planned and caused the provision of funds by BSI and Iran to Hezbollah for the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

45.     BSI and Iran ordered, directed, authorized, ratified and approved the acts of BSI Does 1-10. Accordingly, BSI and Iran are vicariously liable for the acts of BSI Does 1-10.

46.     At all relevant times, BSPLC was an agent of Iran, and performed acts on behalf and at the direction of Iran, in order to advance Iran's Policy and Goals, pursuant to the Hezbollah Agreement and within the scope of its agency, that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs

herein, in that BSI implemented and acted as a conduit and instrumentality for Iran's provision of funds to Hezbollah for the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

47.    Iran ordered, directed, authorized, ratified and approved the acts of BSPLC. Accordingly, Iran is vicariously liable for the acts of BSPLC.

48.    At all relevant times, BSPLC Does 1-10 were agents, officers and employees of BSPLC and Iran and performed acts on behalf and at the direction of BSPLC and Iran, in order to advance Iran's Policy and Goals, pursuant to the Hezbollah Agreement and within the scope of their agency and office, that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein, in that BSPLC Does 1-10 authorized, planned and caused the provision of funds by BSPLC and Iran to Hezbollah for the commission of acts of extrajudicial killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

49.    BSPLC and Iran ordered, directed, authorized, ratified and approved the acts of BSPLC Does 1-10. Accordingly, BSPLC and Iran are vicariously liable for the acts of BSPLC Does 1-10.

50.    At all relevant times, Iranian Does 1-10 were agents, officers and employees of Iran and performed acts on behalf and at the direction of Iran, in order to advance Iran's Policy and Goals, pursuant to the Hezbollah Agreement and within the scope of their agency and office, that caused the Hezbollah Rocket Barrage and the Rocket Attack that killed David Martin Lelchook and harmed the plaintiffs herein, in that Iranian Does 1-10 authorized, planned and caused the provision of funds by Iran to Hezbollah for the commission of acts of extrajudicial

killing and international terrorism including the Hezbollah Rocket Barrage and the Rocket Attack, as described herein.

51.     Iran ordered, directed, authorized, ratified and approved the acts of Iranian Does 1-10. Accordingly, Iran is vicariously liable for the acts of Iranian Does 1-10.

**C.     The Hezbollah Rocket Barrage**

52.     Between July 12, 2006 and August 14, 2006, Hezbollah fired thousands of rockets and missiles (hereinafter "rocket" or "rockets") at civilians in northern Israel.

53.     Over 43 civilians were murdered by the Hezbollah Rocket Barrage, which constituted "extrajudicial killings" within the meaning of 28 U.S.C. § 1605A. Among those killings was the murder of David Martin Lelchook.

54.     On August 2, 2006, David Martin Lelchook, a 52-year old American citizen, was riding his bicycle from the fields of Kibbutz Saar, where he worked, toward his home on the kibbutz when a rocket launched by Hezbollah struck him.

55.     David Martin Lelchook was mortally injured by shrapnel from the initial blast and died thereafter.

56.     David Martin Lelchook is survived by his wife, plaintiff Ester Lelchook, his two daughters, plaintiffs Michal Lelchook and Yael Lelchook, his brother, plaintiff Alexander Lelchook, and his mother, plaintiff Doris Lelchook.

57.     The murder of David Martin Lelchook caused the decedent and his estate severe harm, including conscious pain and suffering, and pecuniary loss.

58.     The murder of David Martin Lelchook caused plaintiffs Ester Lelchook, Michal Lelchook, Yael Lelchook, Alexander Lelchook and Doris Lelchook severe and permanent psychological, emotional and financial injuries and harm.

**D.    Plaintiffs' Injuries Are the Result of Defendants' Conduct**

59.    Hezbollah carried out the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook, thereby causing the injuries and harm suffered by the plaintiffs herein.

60.    Defendants' Transfer of Funds to Hezbollah substantially increased and facilitated Hezbollah's ability to plan, to prepare for and to carry out the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook.

61.    But for Defendants' Transfer of Funds to Hezbollah, Hezbollah's ability (a) to build and maintain its operational infrastructure for the planning and execution of the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook; (b) to pay, train, transport and shelter the terrorist operatives who carried out the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook; and (c) to carry out the Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook, would have been severely crippled and limited.

62.    The Hezbollah Rocket Barrage, including the Rocket Attack that killed David Martin Lelchook, was thereby enabled, facilitated and proximately caused by the conduct of defendants described herein.

63.    Plaintiffs' injuries and harm are therefore the direct and proximate result of defendants' conduct.

**FIRST CLAIM FOR RELIEF**
**AGAINST IRAN, CBI, BSI, IRANIAN DOES 1-10, CBI DOES 1-10 AND BSI DOES 1-10**
**ON BEHALF OF ALL PLAINTIFFS**
**ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(c)**

64.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

65.     Defendants Iran, CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 provided material support and resources to Hezbollah, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the Hezbollah Rocket Barrage, including the Rocket Attack.

66.     Defendants CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 are officials, employees, and/or agents of Iran who, within the scope of their office, employment and/or or agency, provided Hezbollah with the material support and resources that caused and facilitated the Hezbollah Rocket Barrage, including the Rocket Attack.

67.     The decedent and the plaintiffs suffered severe economic, physical, psychological, emotional and other personal injuries as a result of the Rocket Attack, including: conscious pain and suffering; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium; and pecuniary and economic loss, including loss of income and financial support.

68.     As a direct and proximate result of the conduct of defendants Iran, CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 the decedent and the plaintiffs suffered the injuries and harm described herein

69.     Defendants Iran, CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 are therefore jointly and severally liable under 28 U.S.C. § 1605A(c) for the full amount of the damages due to the estate of the decedent and to the plaintiffs.

70.     The conduct of defendants Iran, CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and

BSI Does 1-10 was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a

threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

**SECOND CLAIM FOR RELIEF**
**AGAINST IRAN, CBI, BSI, IRANIAN DOES 1-10, CBI DOES 1-10 AND BSI DOES 1-10**
**ON BEHALF OF ALL PLAINTIFFS**
**ACTION FOR DAMAGES UNDER 28 U.S.C. §1605A(d)**

71.     The allegations set forth in the preceding paragraphs are incorporated by

reference as though fully set forth herein.

72.     The conduct of defendants Iran, CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and

BSI Does 1-10 caused the decedent and the plaintiffs loss of property and financial loss,

including loss of future income and loss of financial support.

73.     Defendants Iran, CBI, BSI, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10

are therefore jointly and severally liable under 28 U.S.C. § 1605A(d) for the full amount of the

financial damages caused to the decedent and the plaintiffs.

**THIRD CLAIM FOR RELIEF**
**AGAINST BSPLC, BSPLC DOES 1-10, IRANIAN DOES 1-10, CBI DOES 1-10**
**AND BSI DOES 1-10 ON BEHALF OF ALL PLAINTIFFS**
**ACTION FOR INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. § 2333(a)**

74.     The allegations set forth in the preceding paragraphs are incorporated by

reference as though fully set forth herein.

75.     The actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI

Does 1-10 and BSI Does 1-10 described herein constituted "acts of international terrorism" as

defined in 18 U.S.C. § 2331.

76.     As required by § 2331, the actions of defendants BSPLC, BSPLC Does 1-10,

Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 described herein constituted a violation of

the criminal laws of the United States including, without limitation, the provisions of 18 U.S.C. §§ 2339A, 2339B and 2339C, which criminalize the provision of funding to terrorist organizations and/or for terrorist activities.

77.     As required by § 2331, the actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 were dangerous to human life by their nature and as evidenced by their consequences. At least 43 civilians were murdered by the Hezbollah Rocket Barrage, including decedent David Martin Lelchook, which was caused and facilitated by the actions of defendants BSPLC and BSPLC Does 1-10.

78.     As required by § 2331(1)(B) the actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 were "intended ... to intimidate or coerce a civilian population [or] to influence the policy of a government by intimidation or coercion," in that between 2001 and 2006, BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 provided Hezbollah with over $50 million in financial support with the specific intent and purpose of facilitating, enabling and causing Hezbollah to carry out acts of violence against American and Israeli targets in order to (a) intimidate and influence the United States government and public and thereby weaken, harm and undermine the United States militarily, economically and politically and (b) intimidate and influence the Israeli government and public and thereby bring about the eventual eradication of the State of Israel and its replacement with an Islamic state and the murder and/or expulsion of the Jewish residents of the State of Israel.

79.     As required by § 2331, the actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 transcended national boundaries in terms

of the means by which they were accomplished and the persons they appeared intended to intimidate or coerce.

80.     The actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 described herein therefore constitute "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333(a).

81.     As a direct and proximate result of the actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 the decedent and the plaintiffs suffered the injuries and harm described herein.

82.     Defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 are therefore liable for all of the damages due to the estate of the decedent and to the plaintiffs, in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

**FOURTH CLAIM FOR RELIEF**
**AGAINST BSPLC, BSPLC DOES 1-10, IRANIAN DOES 1-10, CBI DOES 1-10**
**AND BSI DOES 1-10 ON BEHALF OF ALL PLAINTIFFS**
**AIDING AND ABETTING INTERNATIONAL TERRORISM**
**PURSUANT TO 18 U.S.C. § 2333(a)**

83.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

84.     Since its founding and until July 12, 2006 (and until the present day) Hezbollah is and was a radical Islamic terrorist organization that views the State of Israel, the United States and other Western countries as its enemies.

85.     Since its founding and until July 12, 2006 (and until the present day), Hezbollah has used terrorism against American and Israeli targets in an effort to coerce, intimidate and influence the American and Israeli government and public, and thereby weaken and undermine

the United States and bring about the ultimate destruction of the State of Israel and the murder or expulsion of the Jews in Israel.

86.     Hezbollah's actions described herein are and were dangerous to human life and constituted a violation of the criminal laws of the United States, since Hizbollah is a violent terrorist organization that, since its establishment has murdered hundreds of innocent civilians, and openly proclaims its intention to murder other such innocent civilians.

87.     Hezbollah's actions described herein transcended national boundaries in terms of the means by which they were accomplished, the persons they appeared intended to intimidate or coerce, and the locales in which Hezbollah operates.

88.     The actions of Hezbollah described herein therefore constituted "acts of international terrorism" as defined in 18 U.S.C. §§ 2331 and 2333(a).

89.     BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 knowingly and intentionally transferred $50 million to Hezbollah between 2001-2006, with the specific purpose and intention of enabling and assisting Hezbollah to carry out violent attacks against American and Israeli targets.

90.     The actions of BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 therefore constituted aiding and abetting Hizbollah's "acts of international terrorism" within the meaning of 18 U.S.C. §§ 2331 and 2333(a).

91.     As a direct and proximate result of the actions of defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 the decedent and the plaintiffs suffered the injuries and harm described herein.

92.     Defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10 are therefore liable for all of the damages due to the estate of the decedent and to

the plaintiffs in such sums as may hereinafter be determined, to be trebled pursuant to 18 U.S.C. § 2333(a).

## FIFTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS
### NEGLIGENCE
### (Under the Law of the State of Israel)

93.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

94.     Pursuant to Fed.R.Civ.P. 44.1 plaintiffs hereby give notice of their intention to rely on the law of the State of Israel.

95.     Causes of action in tort in Israeli law are codified in the *Civil Wrongs Ordinance (New Version) - 1968*, (hereinafter "CWO").

96.     The CWO provides that any person injured or harmed by the civil wrongs (i.e. torts) enumerated in the CWO is entitled to relief from the person liable or responsible for the wrong.

97.     CWO § 35 creates a tort of Negligence.

98.     Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

99.     CWO § 35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby

causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

100. CWO § 36 provides that the obligation stated in the last sentence of § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

101. By providing and transferring funds to Hezbollah, the defendants performed acts which a reasonable and prudent person would not have committed under the same circumstances, within the meaning of the CWO.

102. Defendants did not, in the performance of their occupations, use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, within the meaning of the CWO, in that, *inter alia*, defendants provided and transferred funds to Hezbollah.

103. Defendants acted negligently in connection with the decedents and the plaintiffs, toward whom, in the circumstances described herein, defendants had an obligation not to act as they did. Defendants were obligated not to act as they did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, persons such as the decedents and the plaintiffs were liable to be harmed by the acts of defendants described herein.

104. The behavior of defendants constitutes Negligence under the CWO, and that negligent behavior was the proximate cause of the decedent's and the plaintiffs' harm, which includes: death; conscious pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of society and companionship and loss of solatium.

105. Defendants are therefore liable for the full amount of the compensatory damages due to the estate of the decedent and to the plaintiffs.

106. Under Israeli case law a plaintiff harmed by an act of Negligence caused by intentional conduct is entitled to punitive damages.

107. The conduct of defendants was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

**SIXTH CLAIM FOR RELIEF**
**AGAINST ALL DEFENDANTS ON BEHALF OF ALL PLAINTIFFS**
**VICARIOUS LIABILITY**
**(Under the Law of the State of Israel)**

108. The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

109. Defendants knowingly and intentionally provided Hezbollah with funds which enabled, facilitated, supported and assisted Hezbollah to carry out the Hezbollah Rocket Barrage and the Rocket Attack.

110. Vicarious liability principles are recognized in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

111. Defendants knowingly and intentionally assisted Hezbollah to carry out the Hezbollah Rocket Barrage and the Rocket Attack and are therefore liable for the full amount of damages due to the estate of the decedent and to the plaintiffs under CWO § 12.

112. The conduct of defendants was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs pray that this Court:

(a)  Enter judgment against the defendants, jointly and severally, in favor of the plaintiffs, for compensatory damages in an amount to be determined at trial, but for no less than $200,000,000.00 (two hundred million dollars);

(b)  Enter judgment against the defendants, jointly and severally, in favor of the plaintiffs for punitive damages in amounts to be determined at trial;

(c)  Enter judgment against defendants BSPLC, BSPLC Does 1-10, Iranian Does 1-10, CBI Does 1-10 and BSI Does 1-10, jointly and severally, in favor of the plaintiffs for treble damages;

(d)  Enter judgment against the defendants in favor of the plaintiffs for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(e)  Grant such other and further relief as justice requires.

**JURY DEMAND:**

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES TRIABLE BY JURY**

Dated: July 8, 2010

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Counsel for Plaintiffs*

By:

Robert J. Tolchin (No. NY0088)
111 Livingston Street, Suite 1928
Brooklyn, New York 11201
Telephone: (718) 855-3627
Fax: (718) 504-4943
RJT@tolchinlaw.com

HEIDEMAN NUDELMAN & KALIK, P.C.
Richard D. Heideman (No. 377462)
Noel J. Nudelman (No. 449969)
Tracy Reichman Kalik (No. 462055)
1146 19th Street, N.W., Fifth Floor
Washington, DC 20036 (202) 463-1818
Telephone: (202) 463-1818
Fax: (202) 463-2999

NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner, Esq.
(Israeli co-counsel)
10 Hata'as Street
Ramat Gan, 52512 Israel